**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

JERRY CHAMPION,
ADC #91354                                                                                           PLAINTIFF

v.                                         2:11-cv-00015-JTK

WENDY KELLEY, et al.                                                                        DEFENDANTS

**MEMORANDUM AND ORDER**

**I.    Introduction**

This matter is before the Court on the Defendants' Motions for Summary Judgment (Doc. Nos. 82, 89), and on Plaintiff's Motion to Dismiss their Motions (Doc. No. 89). Plaintiff filed a Response to the Motions (Doc. No. 88), and in Response to this Court's November 28, 2011 Order (Doc. No. 90), the parties submitted supplements to their Motions and Responses (Doc. Nos. 94-97).

Plaintiff Jerry Champion is a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC). He filed this action, pro se, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by Defendants with respect to two missed doses of his Tramadol medication on January 26, 2009. According to his Complaint and deposition, Plaintiff suffers from arthritis in his back and was prescribed Tramadol for the pain, to be taken three times a day. (Doc. Nos. 3, 79-1.) On January 26, 2009, he received his first dose of Tramadol for the day, but did not receive the second and third doses. Plaintiff alleges Defendant Norman, a nurse at the Unit, lied to him that the infirmary ran out of their supply of Tramadol, and that Defendant Holloway, the supervisor of the infirmary, failed to operate the infirmary in a professional manner and failed to respond to Plaintiff's complaints and grievances. Finally, Plaintiff alleges Defendant Kelley failed to respond to his letters of complaint. Plaintiff asks for monetary

1

relief for pain and suffering.

This case became confusing because of the parties' uncertainty over the date of the occurrence. While Plaintiff states in his Complaint, deposition, and other discovery responses that the incident occurred in 2009, the grievance he filed lists the incident as occurring in 2010. (Doc. No. 3, p. 8.) In their Summary Judgment Motions, Defendants state that if the incident occurred in 2009, as stated in the Complaint, this action should be dismissed due to Plaintiff's failure to exhaust his administrative remedies as to all three of the Defendants. In support, Defendant Kelley provides the declaration of Sherrie Williams, the medical grievance investigator for the ADC, who states that Plaintiff did not file any medical grievances in 2009. (Doc. No. 84-3.) Defendants Norman and Holloway also state that assuming the date sued upon is 2009, Plaintiff failed to exhaust his administrative remedies against them. These Defendants qualified their arguments, however, because of the uncertainty about the date,[1] and assert an alternative argument that Plaintiff fails to support a claim of deliberate indifference against them. In his initial Response to Defendants' Motions, Plaintiff states, "the date and time are on the grievance are the incident...." (Doc. No. 86, p. 2.) Based on this Response, the Court assumed the correct date of the occurrence to be January 26, 2010, as set forth in Plaintiff's grievance. The Court then provided the parties additional time in which to supplement their Motions and Response to apply to the 2010 date (Doc. No. 90). Defendant Kelley responded that even if the correct year of the incident was 2010, Plaintiff still did not exhaust his remedies against her, because he did not name her in the grievance filed about the incident (Doc. No. 96). Defendants Norman and Holloway responded that if the correct date was

---

[1]Although Plaintiff's grievance is dated 2010, the grievance appeal decision set forth by Defendant Kelley lists the date of the incident as January 26, <u>2009</u>. (Doc. No. 3, pp. 8-11.)

2010, they would withdraw their exhaustion defense and rely solely on the defense that Plaintiff fails to support a claim of deliberate indifference against them (Doc. No. 94).  Plaintiff likewise filed supplemental responses referring to the incident as occurring in 2010.  (Doc. Nos. 95, 97).  However, the confusion escalated when Plaintiff filed a final response stating that the correct date of the incident was January 26, 2009, which is "the date that are on my grievance are this medical complaint." (Doc. No. 98, p. 1, emphasis added.)  Plaintiff further states that "I the Plaintiff was correct the first time went (sic) I saide (sic) that my incendent (sic) was file on the date 1-26-09 but the Court and my defendants was trying to make the plaintiff thank (sic) that he file his complaintiff (sic) on the date 1-26-010 with was a lie." (Id. at p. 2.)

Based on this confusion, the Court held a hearing on January 26, 2012 to allow the parties to present evidence concerning the date of the occurrence.  At the hearing, Plaintiff agreed that he did not possess any grievances filed in 2009 and that all his paperwork reflected that the incident at issue in the Complaint occurred in 2010.  Defendant Kelley's attorney stated that the reference to 2009 made in her grievance response was an error, and presented testimony of Sherrie Williams, the medical grievance coordinator.  Ms. Williams testified that according to the ADC grievance records, Plaintiff did not file any grievances in 2009, and his first grievance in 2010 was filed with respect to the January 26, 2010 incident.  See also Defendants' Exhibit 1, a computer print-out of the grievances filed by the Plaintiff.

In addition to the testimony presented at the hearing, the evidence in the record clearly supports a finding that the incident occurred in 2010.  In support, the Court notes the following: Plaintiff filed a grievance dated January 27, 2010, stating that the incident of missed medication by Defendant Norman occurred on January 26, 2010 (Doc. No. 3, p. 8); the response to the grievance

3

from the health services administrator was dated February 23, 2010, and Plaintiff's appeal from that response was dated March 1, 2010 (Id. at p. 9); although the appeal referenced the incident as occurring on January 26, 2009, the appeal decision (signed by Defendant Kelley) was dated April 21, 2010 (Id. at p. 10); and the Plaintiff's medical records show that on January 26, 2010, the infirmary ran out of the medication Tramadol, and Plaintiff Jerry Champion missed two doses of the medication on that date. (Affidavit of Katrina Harrell, Doc. No. 79-2.) Therefore, the Court will consider the pending Motions as applying to an incident which occurred on January 26, 2010.

## II.     Summary Judgment Motions

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.     Exhaustion

1.  **Defendant Kelley's Motion**

Defendant Kelley states in her Motion and Supplemental Response (Doc. Nos. 82, 96) that Plaintiff's allegations against her should be dismissed for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. As noted earlier, Defendant presents the Declaration of Sherrie Williams, the medical grievance investigator for the ADC, who states that after reviewing the grievance records, "Jerry Champion did not file any medical grievances in 2009," ... "and has never identified Defendant Wendy Kelley in any medical grievance regarding being denied access to pain pills in January of 2009. In fact, inmate Champion did not file any grievances in 2009." (Doc. No. 84-3.) Ms. Williams also states that Plaintiff filed one grievance about the January 2010 incident, EA-10-00724, which named Nurse Norman but did not name or include any allegations against Defendant Kelley. (Doc. No. 96-1, p. 2.) Defendant cites to Jones v. Bock, 549 U.S. 199 (2007), which provides that the prison's grievance requirements define the boundaries of proper exhaustion. Defendant also states that the ADC grievance procedure in effect on January 26, 2009, Administrative Directive (AD) 07-03, required that inmates filing grievances be "specific as to the substance of the issue of complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate." (Doc. No. 84-1, p. 4, emphasis added). Based on the ADC grievance procedure and the case law set forth in Jones v. Bock, Defendant Kelley states Plaintiff's allegations against her should be dismissed for failure to exhaust.

2.  **Plaintiff's Response**

In his numerous responses, Plaintiff states the grievance he attached to his Complaint is proof that he exhausted his administrative remedies as to this incident. He admits that he did not exhaust

1.  **Defendant Kelley's Motion**

Defendant Kelley states in her Motion and Supplemental Response (Doc. Nos. 82, 96) that Plaintiff's allegations against her should be dismissed for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. As noted earlier, Defendant presents the Declaration of Sherrie Williams, the medical grievance investigator for the ADC, who states that after reviewing the grievance records, "Jerry Champion did not file any medical grievances in 2009," ... "and has never identified Defendant Wendy Kelley in any medical grievance regarding being denied access to pain pills in January of 2009. In fact, inmate Champion did not file any grievances in 2009." (Doc. No. 84-3.) Ms. Williams also states that Plaintiff filed one grievance about the January 2010 incident, EA-10-00724, which named Nurse Norman but did not name or include any allegations against Defendant Kelley. (Doc. No. 96-1, p. 2.) Defendant cites to Jones v. Bock, 549 U.S. 199 (2007), which provides that the prison's grievance requirements define the boundaries of proper exhaustion. Defendant also states that the ADC grievance procedure in effect on January 26, 2009, Administrative Directive (AD) 07-03, required that inmates filing grievances be "specific as to the substance of the issue of complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate." (Doc. No. 84-1, p. 4, emphasis added). Based on the ADC grievance procedure and the case law set forth in Jones v. Bock, Defendant Kelley states Plaintiff's allegations against her should be dismissed for failure to exhaust.

2.  **Plaintiff's Response**

In his numerous responses, Plaintiff states the grievance he attached to his Complaint is proof that he exhausted his administrative remedies as to this incident. He admits that he did not exhaust

his remedies with respect to Defendant Kelley, stating a grievance would not have reached her. (Doc. No. 88.)

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), held unconstitutional as applied on other grounds in Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D.Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000). In Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies before filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." (Emphasis in original.) Finally, in Jones v. Bock, 549 U.S. at 218, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."

Based on the partes' ultimate agreement that the incident occurred on January 26, 2010, together with the statements and testimony of Ms. Williams – that Plaintiff did not name Defendant Kelley in a grievance concerning this incident – the Court finds that Defendant Kelley's Motion should be granted.

### B.     Deliberate Indifference

#### 1.     Defendants' Motion

Defendants Norman and Holloway state Plaintiff provides no evidence that they acted with deliberate indifference to his serious medical needs. According to his Complaint and his deposition testimony, Plaintiff stated Defendant Norman lied when she told him that the Infirmary ran out of its supply of Tramadol (Doc. No. 79-1, p. 7). Plaintiff stated he missed two doses of the drug on that date, but admitted receiving the medication the following day, January 27, 2010. (Id. at p. 10.) Defendant Norman states this allegation does not support a finding of deliberate indifference, or that she acted with malicious and sadistic intent. In support of her Motion, Defendant presents the Affidavit of Katrina Harrell, the director of nursing at the EARU (Doc. No. 79-2). According to Ms. Harrell, the infirmary stock supply logs from January 25, 2010, show that Tramadol was depleted at 1 a.m. and replenished at 7 p.m. on January 26, 2010. (Id. at p. 2). In addition, the Plaintiff's medical records show that Plaintiff missed two doses of Tramadol on January 26, 2010, and that the medication was resumed on January 27, 2010. (Id.)[2] Ms. Harrell states that Defendant Norman properly charted the missed doses in Plaintiff's records as indicated by her initials. (Id.)

---

[2]The daily doses were to be given to Plaintiff at 3 a.m., 9 a.m., and 3 p.m., and Defendant Norman's shift on January 26, 2010 ended at 7 p.m. (Doc. No. 79-2.)

Defendant Holloway states that Plaintiff's Complaint against him should be dismissed, because his allegations are based on Holloway's position as a supervisor over Defendant Norman. Defendant states that respondeat superior is not available in § 1983 actions and that he can not be held liable for the actions or inactions of his subordinates, citing Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir. 1989).

### 2. Plaintiff's Response

Plaintiff states his grievance is proof that his medication was available in the Infirmary on January 26, 2010, and that Defendant Norman mistreated him with her "bad mouth and she was a very disrespectful and racial at the plaintiff and she was very unprofessioner (sic) with in her job,...." (Doc. No. 97, p. 2.) Plaintiff states he knows that she lied about his medication being unavailable and that he wrote numerous requests to Defendant Holloway about the problems he had with Defendant Norman. He claims Defendant Holloway never responded to his requests about the date of missed medication.

### 3. Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is

insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

According to the affidavits set forth by the Defendants, the Infirmary log of the Maximum Security Unit shows that the supply of Tramadol was depleted on January 26, 2010, and Plaintiff's medical records show that he missed two doses of Tramadol on that date. (Doc. No. 79-2.) The Defendants' filings also show that Plaintiff's medication was resumed on the next day, January 27, 2010. (Id.) In response, Plaintiff does not dispute that he missed only two doses of the medication; he merely states that he knows that Defendant Norman lied to him about the availability of the medication. However, Plaintiff's unsupported response that Defendant lied is insufficient to counter Defendants' proof and to create a sufficient dispute of material fact. As noted in Webb v. Lawrence County, supra, 144 F.3d at 1135, "[o]nce the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial,'" quoting Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). Id. at 1135. In addition, as set forth in Beyerbach, supra, 49 F.3d at 1236, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay in order to succeed on his claim. In this case, Plaintiff does not allege any detrimental effects as a result of the two missed doses of medication, and provides no medical or other evidence in support of such a finding. Therefore, the Court finds that Plaintiff provides no evidence to support his claim of deliberate indifference against Defendant Norman.

In addition, his allegations against Defendant Holloway appear to be based on his supervisory position. Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). In this case, Plaintiff claims that Defendant Holloway did not respond to his letters of complaint or grievances. Failure to respond to a grievance, however, does not support a finding of a constitutional violation. A "[prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982). In addition, Plaintiff does not allege that Defendant's failure to respond to his requests resulted in a continuation of the missed medication problem. Therefore, the Court again finds no evidence of

deliberate indifference by Defendant Holloway.

### III.    CONCLUSION

IT IS, THEREFORE, ORDERED that Defendants' Motions for Summary Judgment (Doc. Nos. 79, 82) are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint against Defendant Kelley is DISMISSED without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Complaint against Defendants Norman and Holloway is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Defendants' Motions for Summary Judgment (Doc. No. 89) is DENIED.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 27th day of January, 2012.

_____
    JEROME T. KEARNEY
    UNITED STATES MAGISTRATE JUDGE